# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Statesboro Division

FILED
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Savannah, Georgia
By DReese at 4:28 pm, Sep 07, 2017

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| ANITA H. PITTMAN, | ) ) ) | Number 16-60365-EJC |
| *Debtor.* | ) ) | |
| ANITA H. PITTMAN, | ) ) ) | |
| *Plaintiff,* | ) ) ) | Adversary |
| v. | ) ) | Number 16-06018-EJC |
| WILBERT A. LAWRENCE; and KERRI D. LAWRENCE, | ) ) ) ) | |
| *Defendants.* | ) ) | |

## OPINION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pending before the Court is the Motion for Summary Judgment (adv. dckt. 11) filed by Debtor Anita H. Pittman (the "Plaintiff") on February 1, 2017. In this adversary proceeding, Plaintiff seeks to avoid the judicial liens held by Defendants Wilbert A. Lawrence and Kerri D. Lawrence (collectively, the "Defendants") pursuant to 11 U.S.C. § 522(f). These liens arise from default judgments entered against Plaintiff for damages in a personal injury action. The Court finds Defendants' judicial liens may be avoided in their entirety and will enter an order granting Plaintiff's Motion for Summary Judgment.

## I. JURISDICTION

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by then Chief Judge Anthony A. Alaimo on July 13, 1984. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(K).

## II. UNDISPUTED FACTS

A. The Residence

Plaintiff filed her Chapter 7 bankruptcy petition on August 11, 2016. (Dckt. 1). At the time of filing, Plaintiff owned a one-half interest in her residence[1] located at 455 Cedar Crossing Road, Lyons, Georgia 30436 (the "Residence"). (Adv. Dckt. 11-2, Ex. "B"). In her bankruptcy schedules, Plaintiff valued the entire Residence at $357,000.00, valued her one-half interest at $178,500.00, and claimed a homestead exemption of $17,500.00 pursuant to O.C.G.A. § 44-13-100(a)(1). (Dckt. 1). Plaintiff listed AgSouth Farm Credit ("AgSouth") in her schedules as a creditor holding a $322,000.00 claim secured by a first mortgage on the Residence. *Id.*

B. The Defendants' Judicial Liens

In 2008, Defendants and Plaintiff's son were involved in an automobile accident. (Adv. Dckt. 11-1). As a result of this accident, Defendants filed a personal injury action against Plaintiff in the Superior Court of Toombs County. *Id.* On December 26, 2009, default judgments were entered against Plaintiff in the amount of $306,868.00 in favor of

---

[1] The remaining one-half interest is owned by Plaintiff's husband.

2

Defendant Wilbert Lawrence and in the amount of $25,000.00 in favor of Defendant Kerri Lawrence. (Adv. Dckt. 11-2, Ex. F). On September 30, 2011, Writs of Fieri Facias were recorded in the Toombs County property records on behalf of Defendants (Adv. Dckt. 11-2, Exs. G-H). Accordingly, each Defendant held a judicial lien on all of Plaintiff's property, including the Residence, on the date the petition was filed.

C. The Adversary Proceeding

On November 8, 2016, Plaintiff initiated this adversary proceeding[2] by filing a Complaint seeking to avoid Defendants' judicial liens pursuant to 11 U.S.C. § 522(f). (Adv. Dckt. 1). Defendants filed their Answer on December 28, 2016. (Adv. Dckt. 8). On February 1, 2017, Plaintiff filed the instant Motion for Summary Judgment asserting that there are no genuine issues of material fact and that Defendants' judicial liens impair her $17,500.00 homestead exemption in the Residence. On February 20, 2017, Defendants filed a response to Plaintiff's Motion for Summary Judgment arguing that summary judgment should be denied because the value of the Residence is in dispute and "should be determined by a trier of fact who would be presented with multiple independent appraisals." (Adv. Dckt. 13, p. 5).

On April 4, 2017, Plaintiff filed a certified appraisal of the Residence, along

---

[2] Pursuant to Bankruptcy Rule 4003(d), "[a] proceeding by the debtor to avoid a lien . . . under § 522(f) of the Code shall be by motion in accordance with Rule 9014." Despite the procedural defect of filing this matter as an adversary proceeding, the Court will address the substantive issues. *See In re Elledge*, No. CIV.A. 94-71280-W, 98-80059-W, 1998 WL 2017634, at *1 n.1 (Bankr. D.S.C. Aug. 5, 1998). *See also In re Kaur*, BAP No. WW-13-1391-JuKuPa, 2014 WL 3361432, at *1 n.2 (B.A.P. 9th Cir. July 9, 2014) (noting adversary proceeding in § 522(f) matter "accords more due process than a motion").

3

with an affidavit of the appraiser. (Adv. Dckt. 17). According to the appraisal, the Residence had a market value of $324,000.00 as of March 29, 2017. (Adv. Dckt. 17-1). The Court scheduled a status conference on Plaintiff's Motion for Summary Judgment for April 19, 2017. At the April 19, 2017 status conference, Defendants' counsel stated on the record that he did not oppose the Court's consideration of the appraisal for purposes of Plaintiff's Motion for Summary Judgment and that he would not file any competing appraisals.

### III. ANALYSIS

#### A. Default

Before turning to the substance of Plaintiff's Motion, the Court first addresses Plaintiff's argument that Defendants are in default. Defendants filed their Answer (adv. dckt. 8) on December 28, 2016, over 30 days after the issuance of summons (adv. dckt. 2-1) on November 9, 2016. Plaintiff therefore contends Defendants' Answer was untimely pursuant to Bankruptcy Rule 7012(a). The Court disagrees. The record reflects that after Plaintiff filed her Complaint on November 8, 2016, the Clerk issued a summons and notice to Plaintiff advising Plaintiff that she should serve the Complaint within seven days and then file a certificate of service. Plaintiff never filed a certificate of service. However, on November 15, 2016, Defendants filed a Waiver of Service (adv. dckt. 4). It is not clear from the record that Plaintiff ever sent a request for waiver of service pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The waiver form that Defendants filed had an improper case style ("In the United States District Court") and did not provide a *date* when the request for waiver was made by Plaintiff. When this omission was brought to Defendants' attention by the Clerk on November 16, 2016, in the form of a Notice of Deficiency (Adv. Dckt. 5), Defendants

waited until December 13, 2016, to file another Waiver of Service, in which they declared that Plaintiff requested the waiver on November 15, 2016. (Adv. Dckt. 7). Defendants' counsel dated this second Waiver November 15, 2016.

Federal Rule of Bankruptcy Procedure 7004(a)(1) makes Federal Rule of Civil Procedure 4(d)(1) applicable to adversary proceedings. Rule 4(d)(1) authorizes a plaintiff to request a waiver of service. However, when Rule 7004(a)(1)'s incorporation of Rule 4(d)(1) was originally adopted in 1996, Rule 4(d)(1) read:

> (1) A defendant who waives service of a summons does not thereby waive any objection to the venue or to the jurisdiction of the court over the person of the defendant.

In 2007, that language was revised and moved to Rule 4(d)(5). Rule 7004(a)(1), however, was not revised to incorporate Rule 4(d)(5) instead of Rule 4(d)(1). Accordingly, Rule 4(d)(1), as currently written, literally applies. But in bankruptcy cases, because Rule 7004(a)(1) incorporates no other parts of Rule 4(d), it is an "orphan provision devoid of any related rules, such as Rules 4(d)(2) and 4(d)(4), setting forth any consequences of a waiver or of a failure to waive." *In re Barkats*, No. 14-00053, 2014 WL 4437483, at *1 n.1 (Bankr. D.D.C. Sept. 8, 2014). Thus, the filing of the waiver of service did not necessarily grant Defendants the 60-day period described in Rule 4(d)(3) since that part of the Rule is not incorporated by Rule 7004(a)(1).

Regardless, Plaintiff cannot have it both ways. Having never served the Complaint, as evidenced by her failure to file a certificate of service, she cannot argue that Defendants are in default. Defendants have asserted that Plaintiff "requested" the waiver of

service, and she has not disputed that fact. Accordingly, the Court will treat Defendants' Answer as timely filed.[3]

### B. Summary Judgment Standard

Summary judgment[4] is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is genuine "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Id.* at 248. The party moving for summary judgment has "the initial responsibility of informing . . . the court of the basis for its motion" and demonstrating the absence of a genuine issue of material fact. *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991). What is required of the moving party, however, depends on whether the moving party has the ultimate burden of proof on the issue at trial.

> When the nonmoving party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material negating the

---

[3] Not to belabor the point, but to rule otherwise when this matter should not have been filed as an adversary proceeding in the first place would be both absurd and unjust.

[4] Arguably, the summary judgment standard is not even applicable in this case. As noted in Footnote 2, this matter should have been filed as a motion pursuant to Rule 4003(d). Once it was filed as an adversary proceeding, the ordinary course would have called for the parties to submit a joint Rule 26(f) report, which would have prompted the Court to issue a scheduling order. The Court's scheduling order would have set a deadline for motions for summary judgment. That entire procedure was essentially scrapped when Plaintiff, prematurely, filed a Motion for Summary Judgment on February 1, 2017. After Defendants filed their Response, the Court scheduled the matter for a status conference to discuss the procedural posture of the case. At the status conference, Defendants agreed that the Court could consider Plaintiff's appraisal (adv. dckt. 17-2) in ruling on Plaintiff's Motion for Summary Judgment. For simplicity's sake, and because the parties agreed that no evidentiary hearing was necessary, the Court will apply the summary judgment standard.

opponent's claim' (citations omitted) in order to discharge this 'initial responsibility.' Instead, the moving party simply may 'show – that is, point out to the . . . court – that there is an absence of evidence to support the nonmoving party's case. (citations omitted). Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial.

*Four Parcels*, 941 F.2d at 1437 (citing *Celotex*, 477 U.S. at 323-31).

Once this burden is met, the nonmoving party cannot merely rely on allegations or denials in its own pleadings. Fed. R. Civ. P. 56(e). Rather, the nonmoving party must present specific facts that demonstrate there is a genuine dispute over material facts. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993). When reviewing a motion for summary judgment, a court must examine the evidence in the light most favorable to the nonmoving party, and all reasonable doubts and inferences should be resolved in favor of the nonmoving party. *Id.*

C. Avoidance of a Judicial Lien

Plaintiff seeks to avoid Defendants' liens pursuant to 11 U.S.C. § 522(f), which provides that "the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled . . . if such lien is . . . a judicial lien." 11 U.S.C. § 522(f)(1)(A). To avoid Defendants' liens, Plaintiff must establish (1) the lien sought to be avoided is a judgment lien; (2) the lien impairs an exemption that Plaintiff has claimed and to which Plaintiff would have otherwise been entitled; and (3) Plaintiff has an interest in the property. *Id.*; *In re Harris*, 482 B.R. 899, 901 (Bankr. N.D. Ill. 2012). Plaintiff bears the burden of proving each element by a preponderance of the evidence. *Soost v. NAH, Inc., (In re Soost)*, 262 B.R. 68,

74 (8th Cir. BAP 2001). In this case, the only element in dispute is whether Defendants' judicial liens impair Plaintiff's homestead exemption in the Residence under O.C.G.A. § 44-13-100(a)(1).

To aid courts in calculating impairments, Congress adopted a statutory formula to determine whether a lien impairs an exemption. *See* H.R. REP. 103–835, 52, 1994 U.S.C.C.A.N. 3340, 3361. This statutory formula is set forth in § 522(f)(2)(A), which provides:

> (2)(A) For purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of –
>
> (i) the lien;
>
> (ii) all other liens on the property; and
>
> (ii) the amount of the exemption that the debtor could claim if there were no liens on the property;
>
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. § 522(f)(2)(A).

The enactment of § 522(f)(2)(A), however, did not resolve impairment calculations in circumstances where, as here, a judgment lien attaches to the undivided interest of a single owner of jointly owned property. *See Lehman v. VisionSpan, Inc. (In re Lehman)*, 205 F.3d 1255, 1257 (11th Cir. 2000). As one bankruptcy court explained:

> "[I]n determining whether a lien impairs an exemption, the literal formula compares the total amount of liens on the property to the debtor's interest in the property absent any liens. *See* 11 U.S.C. § 522(f)(2)(A). Therefore, in the case of individually owned property, the debtor's interest equals the full value of the property, but in the case of jointly owned property, the debtor's interest is only

a partial interest. § 522(f)(2)(A). Accordingly, the applicable point of comparison is lower when the property has a non-debtor co-owner, and results in higher impairment because the liens on the property exceed the debtor's interest by a greater amount.

*In re Powers*, No. 14-06943-5-SWH, 2016 WL 3344247, at * 2 (Bankr. E.D.N.C. 2016). The resulting higher impairment therefore "creat[es] additional equity for the debtor at the expense of the lienholder whose lien is thereby avoided." *Kolich v. Antioch Laurel Veterinary Hosp. (In re Kolich)*, 328 F.3d 406, 409 (8th Cir. 2003). Such "additional equity can result in the avoidance of more liens than are necessary to assure the debtor the maximum available exemption." *Powers*, 2016 WL 3344247, at * 2.

To remedy this problem, the Eleventh Circuit in *Lehman* adopted a "common sense approach" that deviates from the statutory formula of § 522(f)(2)(A). *Lehman*, 205 F.3d at 1257. Under this approach, courts begin by deducting the full amount of the mortgage from the full value of the property to calculate the total equity in the property absent any judicial liens. *Id.* This amount is divided in half to arrive at the value of the debtor's half interest. *Id.* The exemption is then subtracted from the debtor's half interest to yield the non-exempt portion of the debtor's remaining equity in the property. *Id.* The judicial lien creditor retains its lien in this amount. *Id.* Instead of calculating the amount of impairment or the amount of liens that are avoidable, the common sense approach calculates the amount of liens that are not avoidable. *Id.*

D. <u>Value of the Residence</u>

It is well established that the particular date a bankruptcy court should use to assess the value of the Residence for purposes of § 522(f) is the petition date. *See, e.g., In*

℅AO 72A
(Rev. 8/82)

9

*re Thigpen*, 374 B.R. 374, 376 (Bankr. S.D. Ga. 2007) (Davis, J.); *Pepper v. Pub. Serv. Emp. Credit Union (In re Pepper)*, 210 B.R. 480, 484 (Bankr. D. Colo. 1997). In her Motion for Summary Judgment, Plaintiff alleges the Residence had "a fair market value of no greater than [$357,000.00]" as of the petition date. (Dckt. 11-1, ¶ 4). To support this valuation, the Plaintiff provided the Court with the following evidence: (1) Plaintiff's bankruptcy schedules, which value the Residence at $357,000.00 (dckt. 1); (2) an affidavit from Plaintiff's husband in which he states, "[i]t is my opinion, based on the sales of property in the area, that the Residence does not have a value greater than the amount listed in [Plaintiff's] schedules of $357,000.00" (adv. dckt. 11-2, Ex. E); and (3) the appraisal of the Residence at $324,000.00 on March 29, 2017 (adv. dckt. 17-2).

After reviewing the evidence in the record, the Court finds there is no genuine dispute that the Residence had a fair market value of no greater than $357,000.00 on the petition date. Because the Court must construe the evidence in the light most favorable to Defendants as the nonmoving parties, the Court will set the value of the Residence at $357,000.00 in making its determination under § 522(f).

### E. The "Common Sense Approach" Calculation

Using the "common sense approach" set forth in *Lehman*, the Court makes the following calculation:

| | |
|---|---|
| Full Value of the Residence | $357,000.00 |
| Full Amount of AgSouth's Lien | ($322,000.00) |
| Total Equity in the Residence | $35,000.00 |

AO 72A
(Rev. 8/82)

10

| | |
|---|---|
| Value of Plaintiff's One-Half Interest | $17,500.00 |
| Plaintiff's Homestead Exemption | ($17,500.00) |
| Remaining Non-Exempt Equity | $0.00 |

Based on this calculation, there is no non-exempt equity to which either of Defendants' liens could attach, and thus Defendants' liens may be avoided in their entirety under 11 U.S.C. § 522(f)(2)(A). Accordingly, the Court finds Plaintiff is entitled to summary judgment as to her claim for avoidance of Defendants' judicial liens on the Residence. The Court will enter a separate order granting Plaintiff's Motion for Summary Judgment (adv. dckt. 11).

Dated at Savannah, Georgia, this 7th day of September, 2017.

Edward J. Coleman, III, Judge
United States Bankruptcy Court
Southern District of Georgia